**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GABBANELLI ACCORDIONS & IMPORTS, L.L.C., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-12-0381 |
| HOHNER, INC., SHEILA LEE d/b/a HOUSTON ACCORDION PERFORMERS/ HERITAGE ARTS PRODUCTION, *et al*., | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ON ATTORNEY'S FEES**

**I.    Background**

On May 1, 2013, the court granted the motion filed by Gabbanelli Accordions & Imports, L.L.C. to enforce the agreement it had reached with Hohner, Inc. to settle Gabbanelli's claims that Hohner had sold accordions with grille designs that infringed Gabbanelli's trademarks. The settlement included Hohner's promise to stop selling accordions with infringing grilles and to pay Gabbanelli $60,000.00 in damages. The court found that Hohner had breached the agreement by continuing to sell accordions with infringing designs. On April 21, 2014, after discovery, briefing, and a hearing, the court awarded Gabbanelli $60,000.00, representing the benefit of the settlement agreement that Hohner had breached. (Docket Entry No. 87). The record did not show that the breach caused Gabbanelli to lose identifiable sales, revenues, or profits, and showed no credible evidence of threats of future breaches. (*Id.*).

Gabbanelli then sought an award of $86,182.00 in fees and $6,985.41 in costs incurred in enforcing the settlement agreement. (Docket Entry No. 88). Hohner argued that the court should

award no more than $24,000.00 in fees and costs. (Docket Entry No. 89 at 10 ("$24,000 represents the absolute outside limit on a reasonable contingency fee.")). In its reply, Gabbanelli lowered its request to $80,819.00 in fees and agreed not to seek costs. (Docket Entry No. 90 at 2).

Based on the briefs, the arguments, the record, and the applicable law, the court finds and concludes that a reasonable fee is $51,887.70 and awards Gabbanelli that amount. The reasons are explained below.

## II.     Analysis

### A.     The Legal Standard for Fee Awards

Texas law governed the substantive issue and applies to this fee application as well. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "Texas law authorizes the award of 'reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.'" *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (quoting Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997)). "The award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages." *Id.* (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603, 613 (5th Cir. 2000). "The trial court has the discretion to determine the appropriate amount of attorneys' fees following a successful claim under § 38.001." *Id.* at 640-41.

Texas courts generally use the lodestar method for calculating attorney's fees. *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard. This standard is substantially similar under both

federal law and state law."). Hohner contends that the lodestar method does not apply to a "garden-variety breach of contract claim" under § 38.001(8), citing one unpublished case from an intermediate appellate court. *See Paez v. Trent Smith Custom Homes*, No.04-13-00394, 2014 WL 1089751, at *4 (Tex. App.-San Antonio March 19, 2014) (unpublished) (holding that "the lodestar method" does not apply in a "garden-variety breach of contract claim in which the prevailing party sought to recover damages as well as attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code"). Gabbanelli argues that Fifth Circuit and Texas law apply the lodestar method to breach-of-contract cases. *See, e.g.*, *Stuctural Metals, Inc. v. S&C Elec. Co.*, 2013 WL 3790307, at *1 (W.D. Tex. 2013) (citing cases and applying lodestar method to Texas breach-of-contract case). The court agrees that both federal and state law require primary reliance on the lodestar method.

The first lodestar step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Hohner does not dispute the reasonableness of the hourly rates sought. (Docket Entry No. 89 at 4).

The second step is to determine the number of hours "reasonably expended." *McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 284 (5th Cir. 2008). One consideration is whether the party seeking attorney's fees exercised billing judgment. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 799 (5th Cir. 2006). Evidence of hours written off shows billing judgment. *Id.* at 800. "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to

3

substitute for the exercise of billing judgment." *Id.* at 799; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Mullins v. TestAmerica*, No. 3:02-cv-0106, 2008 WL 4526182, at *10 (N.D. Tex. Oct. 8, 2008) (deducting 15% from the fee award because although the fee applicant claimed to have exercised billing judgment, the time entries did not show how many hours had been written off and contained errors and inconsistencies); *Heliflight, Inc. v. Bell/Agusta Aerospace Co., L.L.C.*, No. 4:06-cv-425, 2007 WL 4373259, at *4, *8 (N.D. Tex. Dec. 12, 2007) (reducing fee award by 20% for various reasons, including the plaintiff's failure to show what time had been written off).

Another consideration is whether the hours claimed yield a fee that is excessive compared to the amount at stake or owed. *See Sibley v. RMA Partners, L.P.*, 138 S.W.3d 455, 459 (Tex. App. – Beaumont 2004, no pet.). "Attorney's fees must bear some reasonable relationship to the amount in controversy." *Cordova v. Southwestern Bell Yellow Pages*, 148 S.W.3d 441, 448 (Tex. App. – El Paso 2004, no pet.) (citing *Rep. Nat'l Life Ins. Co. v. Heyward*, 568 S.W.2d 879 (Tex. Civ. App. – Eastland 1978, writ ref'd n.r.e.); *see also Thomas v. Bobby D. Assocs.*, No. 12-08-00007, 2008 WL 3020339, at *4 (Tex. App. – Tyler Aug. 6, 2008, no pet.). Texas law, however, does not require precise proportionality between the fees awarded and either the relief obtained or the original amount in controversy. *See, e.g.*, *Bank of Texas v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App. – Houston [1st Dist.] 2008, no pet.) (affirming $52,000 in attorney fees on recovery for $8,276 missing check); *USAA Cnty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102–03 (Tex. App. – Houston [1st Dist.] 2007, no pet.) (affirming $52,310 in attorney's fees for recovering on a $2,000 insurance claim); *Cordova*, 148 S.W.3d at 448–49 (affirming $20,885 in attorney's fees for recovering

4

damages under a $7,092 contract); *Sibley,* 138 S.W.3d at 458–59 (affirming $82,748 in attorney's fees for recovering on a note worth approximately $43,000). Interpreting Texas law, federal courts have also held that "disproportion alone does not render the award of attorneys' fees excessive." *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 355 (5th Cir. 2001) (affirming $712,000 in attorney's fees on recovery of $74,570 in actual damages on various state statutory and common-law claims); *see also Quanta Serv's Inc. v. Am. Admin. Grp. Inc.*, 384 F. App'x 291, 298 (5th Cir. 2008) (affirming $116,767.68 in attorney's fees for $100,000 damages award obtained in contract suit).

An application seeking a fee large in relation to the amount at issue or recovered is more likely to be found excessive if the prevailing party's counsel "overprepared," expending more time and resources than the case warranted. *See, e.g.*, *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) ($529,209.88 in fees for one year of work by 11 attorneys and 6 paralegals was excessive "for what was – or at least should have been – simply a coverage dispute" about whether the insurer had to indemnify and defend an additional insured against a $435,000 negligence claim); *Cordova*, 148 S.W.3d at 449 ("If the prevailing party has overprepared the case, then the party liable for attorney's fees should not be held responsible for time spent in overpreparation."); *Republic Nat'l Life*, 568 S.W.2d at 887 (finding that attorneys who "worked between 750 and 1,000 hours on [a] $12,000 [contract] lawsuit . . . overproduced and defendant should not be held liable for such overproduction").

After the court completes both steps, it multiplies the hours "reasonably expended" by the reasonable hourly rates to determine the lodestar figure. *Id.* A court then decides whether to increase or decrease the amount based on the factors set out in *Johnson v. Georgia Highway*

5

*Express*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op., Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).

B.   **The Fee Application**

Gabbanelli argues that it is entitled to $80,819 in attorney's fees. (Docket Entry No. 90 at 2). That is less than the $86,182 in fees and $6,985.41 in costs Gabbanelli initially sought. (Docket Entry No. 88 at 2-3). Gabbanelli contends that it incurred the fees "investigating Hohner's violation" of the settlement agreement, "preparing and filing" the motion to enforce, "preparing for and attending various hearings in this matter," "engaging in motion and discovery practice," "corresponding" with opposing counsel, "preparing and filing briefing" with the court, and "preparing" its fee application. (Docket Entry No. 88 at 3). Lead counsel L. Bradley Hancock's affidavit, (Docket Entry No. 88-1), and the accompanying time records, (Docket Entry No. 88-2), indicate that he and his colleagues spent over 300 hours. They have written off a considerable amount of time, however, including any fees incurred after January 13, 2014. (Docket Entry No. 88-2 at 56-68). They initially requested compensation for 223.85 hours but agreed to some further

6

reductions in their reply brief. At the selected hourly rates, Gabbanelli calculates a lodestar of $80,819 in fees.

The current application is based on hourly rates ranging from $335 to $450 an hour, which Hohner agrees are reasonable. (Docket Entry No. 89 at 4). Hohner disputes the reasonableness of hours claimed. Hohner argues that "no fees should be awarded for the time period after July 24, 2013," (Docket Entry No. 89 at 7), when Hohner made an offer of judgment of $49,500. At that point, Gabbanelli had incurred $42,209 in fees. Gabbanelli argues that Hohner's "request is unreasonable and overreaching" because it excludes fees incurred in responding to Hohner's discovery requests, in preparing for and attending various hearings, in responding to Hohner's filings, and in corresponding with Hohner's counsel on damages and settlement. (Docket Entry No. 90 at 9). Hohner responds that it took Gabbanelli nearly a year and another $38,610 in legal fees to obtain only $10,500 more in damages than the offer of judgment and argues that the hours and fees are unreasonable in light of the relief obtained. Hohner also argues that the lodestar must be reduced, emphasizing the lack of complexity, the limited success Gabbanelli achieved, the unnecessary costs it forced Hohner to incur, and the result under a contingency fee arrangement.

### C. The Lodestar Calculation

As an initial matter, the court concludes that the $42,209 in fees Gabbanelli incurred before the July 2013 offer of judgment were reasonable. The court also agrees with Gabbanelli that it is entitled to some fees incurred after July 24, 2013. In April 2014, Gabbanelli was awarded $60,000 in damages for the settlement agreement breach. Although Gabbanelli spent a great deal of money

7

pursuing its damages theories between the July 2013 offer of judgment and the court's April 2014 damages award, the damages award exceeded what Hohner offered.

Hohner argues that Gabbanelli "dragged [it] and the Court through discovery disputes that were caused solely by Gabbanelli's refusal to identify a damages model." (Docket Entry No. 89 at 7). This argument fails to account for the fact that the court authorized the damages-related discovery targeted at the difference between the usual sale price of the accused accordion grilles and what Hohner actually sold them for after finding Hohner had breached the settlement agreement. (Docket Entry Nos. 48, 57). Gabbanelli has used billing judgment by excluding the fees it incurred in connection with the initial discovery request from its application.

The court also agrees with Hohner that Gabbanelli is not entitled to all the fees it incurred between July 2013 and January 2014. As Hohner points out, Gabbanelli incurred $38,610 in legal fees to obtain $10,500 more in damages than Hohner was prepared to offer. Although there is "no rule that fees cannot be more than actual damages," *Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 153 (Tex. App. 2012), a fee amount can be so disproportionate to the marginal damages obtained to make the number of hours spent unreasonable. Even excluding the fees Gabbanelli has written off, it spent roughly $3.86 in legal fees for every dollar in damages earned from Hohner's July 2013 offer of judgment until this court's April 2014 damages award. Put another way, Gabbanelli's legal fees increased by 91% in order to increase its damages by 21%. Some of Gabbanelli's increased fees during this period stem from the withdrawal of the lawyer familiar with the case, Frank Matheny, in August or September 2013. (Docket Entry Nos. 58, 61). These added fees should not be shifted to Hohner.

The court finds and concludes that a 60% reduction of the number of hours after July 2013 is reasonable. The resulting lodestar amount is $57,653, representing a 36.5% increase in fees from the July 2013 offer of judgment, reasonable in relation to the 21% increase in damages Gabbanelli obtained.

D.  **Adjusting the Lodestar**

Hohner argues that the lodestar should be adjusted downward for four reasons: (1) Gabbanelli's failure to prove anything beyond what the court found on May 1, 2013; (2) Gabbanelli's erroneous pursuit of damages based on legal theories and alleged injuries unrelated to the breach of the settlement agreement; (3) the unnecessary expense imposed on Hohner; and (4) the fees that would result from a typical contingency fee arrangement. These arguments go to several *Johnson* factors, including the novelty and difficulty of the questions, the amount at issue, the results obtained, and whether the fee is fixed or contingent. *See Johnson*, 488 F.2d at 717-19.[1] The court agrees in part and disagrees in part with Hohner's arguments.

Hohner contends that the benefit-of-the-bargain damages awarded were "in no way different from what Gabbanelli could have achieved nearly a year ago" from the offers Hohner made. (Docket Entry No. 89 at 7). But Hohner offered only $36,445.03 in May 2013 and $49,500 in July 2013.

Hohner also proposes a 25% fee reduction to reflect "the uncomplicated nature of the case and Gabbanelli's failure to support a claim for damages." (Docket Entry No. 89 at 8). But the "case law on monetary recovery in trademark infringement cases" can sometimes be "a confusing melange

---

[1] Hohner does not argue that any of the remaining *Johnson* factors merits a downward adjustment. Nor does Gabbanelli argue that any of the factors supports an upward adjustment. The remaining factors do not support either a downward or upward adjustment.

9

of common law and equity principles," 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:58 (4th ed. updated March 2014). And Texas law allows damages in breach-of-contract suits involving trademark rights beyond specific lost sales or profits. *See Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882 (Tex. App. 2004-Dallas, pet. denied). In *Qaddura*, the court considered the remedies in a similar case involving the breach of a settlement agreement tied to an underlying trademark suit. *See id.* at 889. A breach of contract directly linked to trademark infringement means that the measure of the plaintiff's benefit of the "bargain is the same as the trademark remedies available for the infringing conduct." *Id.*[2] This case was not quite as straightforward as Hohner contends.[3] A 25% downward adjustment is too much.

That said, the scope and complexity of the case did not justify all the fees Gabbanelli seeks. A 10% further downward adjustment is appropriate, reducing the fee award from $57,653.00 to $51,887.70.

The court does not agree with Hohner's argument that Gabbanelli pursued improper legal theories. The remedies potentially available include those "compensating the plaintiff for any injury suffered, preventing the defendant's unjust enrichment from use of the mark, and deterring infringing conduct." *Qaddura*, 141 S.W.3d at 889. It was reasonable and necessary for Gabbanelli's lawyers to research and develop various damages measures for Hohner's breach of the settlement agreement, even if discovery ultimately eliminated some.

---

[2] Because this court found that Hohner breached the settlement agreement and awarded damages under the contract, rather than the Lanham Act, the Fifth Circuit's refusal in *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 336 n.44 (5th Cir. 2008), to award both a "monetary award on the [plaintiff's] Lanham Act claim and [] attorney's fees on the [plaintiff's] breach of contract claim" is inapposite.

[3] This consideration also supports the court's use of the lodestar approach, notwithstanding *Paez v. Trent Smith Custom Homes*, No.04-13-00394, 2014 WL 1089751, at *4 (Tex. App. March 19, 2014) (unpublished).

Hohner argues that "Gabbanelli's contention that it was entitled to summary judgment (conceding there were no fact issues uncovered within the preceding ten months)" supports a downward adjustment. (Docket Entry No. 89 at 8). If Gabbanelli sought fees for its summary judgment briefing on damages, the court might agree. But Gabbanelli has written off such fees, demonstrating billing judgment. (Docket Entry No. 88-2 at 58, 62, 65-66). This argument does not support a further downward adjustment.

As to Hohner's argument that Gabbanelli inflicted unnecessary expense, the court disagrees. Hohner restates its arguments in support of a lower lodestar based on its July 2013 offer of judgment, but those points are already taken into account in the lodestar calculation.

Hohner's final argument is that the typical contingency fee for the damages awarded in this case requires a downward adjustment. The parties did not have a contingency fee contract. (*See* Docket Entry No. 90-3). The parties did agree to hourly charges. *See Argonaut Ins. Co. v. ABC Steel Prods. Co.*, 582 S.W.2d 883, 889 (Tex. App. 1979-Texarkana, writ refused n.r.e.) ("The fee should be only that which would be reasonable for a litigant himself *to pay* his own attorney." (emphasis added)). This argument does not support a further downward adjustment.

## III. Conclusion

The court awards Gabbanelli its attorney's fees in the amount of $51,887.70.

SIGNED on November 24, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge